

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

| | | |
|---|---|---|
| ARTHUR HARRIS, | ) | **CJ-2021-3014** |
| Plaintiff, | ) | |
| vs. | ) | Case No. _____ |
| AMERICAN AUTO SHIELD, LLC, and CARSHIELD, LLC, | ) | FILED IN DISTRICT COURT OKLAHOMA COUNTY |
| Defendants. | ) | JUL 16 2021 RICK WARREN COURT CLERK |

**PETITION**

COMES NOW the plaintiff, Arthur Harris, and for his Petition and causes of action against the defendants, states as follows:

1. Arthur Harris is a resident of Oklahoma City, Oklahoma.

2. American Auto Shield, LLC, is a foreign limited liability company doing business in the State of Oklahoma.

3. CarShield, LLC, is a foreign limited liability company doing business in the State of Oklahoma.

4. Upon information and belief, American Auto Shield, LLC, and CarShield, LLC, (hereafter collectively "Defendants") are authorized to sell and issue extended warranty policies within the State of Oklahoma by the Oklahoma Insurance Department.

5. Defendants regularly conduct business throughout the State of Oklahoma, including Oklahoma County. Defendants advertise, sell and issue policies, process and pay claims, and conduct all matters of business with customers living in Oklahoma County, Oklahoma.

7. Defendants have sufficient contacts with the State of Oklahoma to warrant the exercise of *in personam* jurisdiction by this Court over them. Pursuant to 12 O.S. §2004(F), this Court has proper subject matter jurisdiction. Pursuant to 12 O.S. §137, venue is proper in Oklahoma County, Oklahoma.

## OBJECT AND NATURE OF ACTION

8. This action by Plaintiff is to recover actual and punitive damages as a result of fraud, fraudulent inducement, violation of the Oklahoma Consumer Protection Act, negligence, breach of contract, breach of the implied duty of good faith and fair dealing, intentional infliction of emotional distress, and the tort of outrage.

## CONSUMER PROTECTION RULES THAT MUST BE FOLLOWED

9. A seller of extended warranties must truthfully advertise the nature and benefits of the product it sells.

10. A seller of extended warranties must fully disclose the terms of the extended warranty contract.

11. A seller of extended warranties in the State of Oklahoma must obey and follow the rules and regulations of the Oklahoma Consumer Protection Act.

12. A seller of extended warranties must honor and pay claims pursuant to the terms of the extended warranties.

13. A seller of extended warranties must investigate all claims made by purchases of its extended warranties.

## FACTS

14. Plaintiff adopts and incorporates paragraphs 1 through 13 above, as if more fully stated herein, and further alleges and states as follows.

15. On or about May 4, 2020, Defendants actively advertised its extended warranties using phrases such as, "CarShield pays for repairs so I don't have to", and "If your car breaks down, could you afford to pay thousands and thousands on a new engine or transmission? With CarShield you won't have to."

16. On or about May 4, 2020, Defendants paid high-profile celebrities to advertise their products. These celebrities included "Ice-T" and "Chris Berman".

17. Defendants' intended audience for its commercials include Plaintiff.

18. Defendants and/or their authorized representatives authorized and approved of the content of their commercials.

19. Defendants intend for the statements and representations contained in their commercials to be relied on by their intended audience, including Plaintiff.

20. Plaintiff saw these advertisements and believed he could purchase protection from expense repair costs to his vehicle, and he called the CarShield phone number.

21. On or about May 4, 2020 (hereafter "the Purchase Date"), Defendants sold an extended warranty (hereafter "the Warranty") to Plaintiff.

22. The Warranty, identified as "Contract Number – MRF3168161," was in full force and effect from the Purchase Date through at least the calendar year 2020.

23. The Warranty provided coverage and/or insurance protection for Plaintiff in the event Plaintiff's vehicle, a 2006 Chrysler 300C SRT with VIN 2C3LA73WX6H498283 (hereafter "the Vehicle") suffered a mechanical breakdown of the engine within the time and mileage parameters of the Warranty, which Plaintiff believed amounted to insurance coverage.

24. During the month of June 2020, the Vehicle suffered a mechanical breakdown of the engine, which occurred during the time and mileage parameters of the Warranty.

25. Plaintiff timely initiated a claim with Defendants (hereafter "the Claim").

26. Defendants instructed Plaintiff to take the Vehicle to an ASE Certified mechanic for diagnosis.

27. Plaintiff had the Vehicle towed to Mr. Milex Transmission, which performs engine and transmission repairs, as instructed by Defendants.

28. An ASE certified mechanic employed by Mr. Milex Transmission (hereafter "the Mechanic") inspected the Vehicle and determined the engine was damaged beyond repair and needed to be replaced.

29. The Mechanic concluded a hydraulic lifter in the engine seized up, which caused damage to the cam shaft, which caused damage to the engine block.

30. According to the terms of the Warranty, the hydraulic lifter is a covered part, as are any other parts damaged as a result of the failed hydraulic lifter. Therefore, the damage to the lifter, cam shaft and engine block were covered under the terms of the Warranty.

31. Plaintiff made proper demand on Defendants that his claim be paid in full.

32. Defendants acknowledged the hydraulic lifter was covered under the terms of the Warranty.

33. Defendants were aware, and did not dispute, the damage to the cam shaft and the engine block were caused by the failed hydraulic lifter.

34. Defendants offered to pay the repair costs for the hydraulic lifter.

35. Defendants denied payment for the repair/replacement of the cam shaft and the engine block.

36. Defendants' actions amount to a denial of Plaintiff's claim.

37. Defendants' actions amount to a total disregard of obvious evidence, which supported coverage and required payment of the Claim.

38. Defendants' actions are in violation of the duty of good faith and fair dealing.

39. When Plaintiff purchased the Warranty from Defendants, Plaintiff did not contract to obtain a commercial advantage, but sought to protect himself against the risks of accidental loses and the mental stress that could result from such losses. Defendants knew one of the primary reasons consumers, such as Plaintiff, purchase extended warranties is the peace of mind and security that it provides in the event of loss. Defendants knew that the very risk Plaintiff insured himself against presupposed that when a claim was made for benefits under the Warranty, Plaintiff could possibly be in financial straits or circumstances and, therefore, particularly vulnerable to oppressive tactics on the part of economically powerful entities, such as Defendants.

40. Defendants' advertisements are designed to induce consumers into believing that by purchasing Defendants' extended warranties the risk of paying for repairs is transferred from the consumer to the Defendants.

41. Defendants' relationship with Plaintiff was a fiduciary relationship and/or a special relationship making the laws governing fiduciary relationships applicable. Despite this fiduciary and/or special relationship, Defendants' refused to honor their prior commitment to pay for damages incurred by Plaintiff.

42. As a result of Defendants' improper conduct, Plaintiff sustained, among other things, monetary damages, inconvenience, physical discomfort, loss of peace of mind and security, emotional distress, worry, anguish, financial distress, and attorney fees.

## CAUSES OF ACTION

## FRAUD

43.  Plaintiff incorporates Paragraphs 1 to 42 herein by reference.

44.  Defendants advertised the Warranty in a manner which led Plaintiff to believe he was buying protection against the high cost of auto repairs. Defendants led Plaintiff to believe that if his engine failed then all he would have to pay was a deductible and that he was insured against that loss.

45.  Defendants failed to make full disclosure of the terms and conditions of the Warranty.

46.  Defendants advertised the Warranty as if it was insurance.

47.  In response to Defendants' advertisements Plaintiff called the designated phone number and spoke with one of Defendants' authorized representatives about the Warranty. As to coverage, the representative told Plaintiff all he would ever have to pay for an engine was a $100.00 deductible.

48.  Plaintiff relied to his detriment on the false representations.

49.  Defendants' actions amount to fraud, actual and constructive.

## FRAUDULENT INDUCEMENT

50.  Plaintiff incorporates Paragraphs 1 to 49 herein by reference.

51.  Defendants made the false representations referenced herein in order to induce Plaintiff to agree to their form contracts, including arbitration language.

52.  Plaintiff did not sign documents and did not agree to arbitration.

53.  Defendants explained parts of the Warranty, but failed to make full disclosure of its terms, including arbitration.

54. Defendants' actions amount to fraudulent inducement.

## VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT

55. Plaintiff incorporates Paragraphs 1 to 54 herein by reference.

56. The Oklahoma Consumer Protection Act declares it unlawful for a business to make a false or misleading representation as to the source and/or benefits of the subject of a consumer transaction.

57. Defendants falsely informed Plaintiff the Warranty provided full protection against engine failure and that Plaintiff's only cost would be the deductible, when in fact Defendants knew that to be untrue, which amounts to a violation of the Oklahoma Consumer Protection Act.

58. The Oklahoma Consumer Protection Act provides for actual damages and costs of litigation including reasonable attorney's fees.

## BREACH OF CONTRACT

59. Plaintiff incorporates Paragraphs 1 to 58 herein by reference.

60. Defendants breached the warranty contract with Plaintiff by failing to pay him for repair costs incurred as a result of the engine breakdown. As a result of Defendants' breach of contract, Plaintiff has been damaged.

## BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING

61. Plaintiff incorporates Paragraphs 1 to 60 herein by reference.

62. Defendants' warranty plan provides for the transfer of risk and meets all of the elements for a contract of insurance.

63. In *Embry v. Innovative Aftermarket Sys. L.P.*, 2008 OK CIV APP 92, 198 P.3d 388; citing 1 Couch on Insurance, § 1:6 (3rd Ed.2007); *see also Epmeier v. U.S.*, 199 F.2d 508, 509–10 (7th Cir.1952) ("Insurance, of ancient origin, involves a contract whereby, for an adequate

consideration, one party undertakes to indemnify another against loss from certain specified contingencies or perils. It is contractual security against possible anticipated loss. Risk is essential, and equally so, a shifting of its incidence from one to another."); *Commissioner of Int. Rev. v. W.H. Luquire Burial Ass'n. Co.*, 102 F.2d 89 (5th Cir., 1939) (Luquires's agreement to provide burial benefits for a consideration equated to an insurance contract to tax company as an insurance company).

64. In *McMullan v. Enter. Fin. Grp., Inc.*, 2011 OK 7, ¶ 19, 247 P.3d 1173 the Oklahoma Supreme Court discussed that vehicle service contracts were written like insurance policies and that the 'obvious purpose of a vehicle service contract is to protect the purchaser from the expenses associated with an unexpected mechanical breakdown or an expensive but necessary repair.' " *McMullan*, 2011 OK 7, ¶ 13, 247 P.3d at 1178. *See Sparks v. Old Republic Home Prot. Co., Inc.*, 2020 OK 42, ¶ 33, 467 P.3d 680, 690, *cert. denied, Old Republic Home Prot. Co., Inc. v. Sparks*, 141 S. Ct. 895, 208 L. Ed. 2d 452 (2020).

65. Just as in *Embry* and *Sparks*, the workings and purpose of Defendants' warranty meet all elements of an insurance product. *See, Epmeier*, 199 F.2d at 509–10. ("Whether or not a contract is one of insurance is to be determined by its purpose, effect, contents, and import, and not necessarily by the terminology used, and even though it contain declarations to the contrary."); 1 Couch on Insurance § 1:8 (3d Ed.2007).

66. Defendants owed a duty of good faith and fair dealing to Plaintiff, which obligated Defendants to perform a reasonable investigation and pay Plaintiff's covered claim.

67. By ignoring obvious evidence and by failing to pay Plaintiff's claim, Defendants breached their duty of good faith and fair dealing owed to Plaintiff.

68. Defendant further violated the duty of good faith and fair dealing by unreasonably failing to perform a proper investigation and by imposing conditions upon Plaintiff that did not exist within the Warranty.

69. Defendants had no reasonable basis to deny Plaintiff's claim.

70. Defendants further violated their duty of good faith and fair dealing by negligently supervising this claim.

71. Defendants breached the duty of good faith and fair dealing owed by them to Plaintiff.

72. Defendants recklessly disregarded their duty to deal fairly and in good faith with Plaintiff. Further, Defendant acted intentionally and with malice by failing to pay Plaintiff's claim and by imposing arbitrary conditions on Plaintiff that were not contained within the Warranty.

73. Defendants should be punished for engaging in reckless, intentional and malicious conduct and to serve as an example to Defendants and others who might attempt the same type of conduct.

74. As a result of Defendants' breach of their duty of good faith and fair dealing, Plaintiff has suffered actual monetary loss and also has suffered inconvenience, physical discomfort, loss of peace of mind and security, emotional distress, worry, anguish, embarrassment and financial distress.

75. Defendants' actions have inflicted financial consequences and other injury and damages upon Plaintiff.

76. Further, Defendants' wanton, willful, malicious, and/or reckless acts are part of a common plan and/or scheme to wrongfully deny payment of legitimate claims made by their customers, both in investigating, evaluating and paying first-party claims.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/TORT OF OUTRAGE

77. Plaintiff incorporates Paragraphs 1 to 76 herein by reference.

78. The conduct of Defendants is so extreme in degree, as to go beyond all bounds of decency, and be regarded as atrocious and utterly intolerable in a civilized community so as to call for the imposition of actual and punitive damages.

## NEGLIGENCE

79. Plaintiff incorporates Paragraphs 1 to 78 herein by reference.

80. Defendants owed a duty to Plaintiff to protect him from its employees falsely advertising the Warranty, falsely describing the terms and conditions of the Warranty, and failure to pay his claim.

81. Defendants' employees falsely advertised the Warranty, falsely described the terms and conditions of the Warranty, and improperly failed to pay his claim.

82. Defendants breached their duty to Plaintiff.

83. Defendants' actions amount to negligence.

WHEREFORE, the plaintiff prays for judgment against the defendant, for actual and punitive damages, both in an amount in excess of the amount required for federal diversity jurisdiction, for fraud, fraudulent inducement, violation of the Oklahoma Consumer Protection Act, negligence, breach of contract, breach of the implied duty of good faith and fair dealing, intentional infliction of emotional distress/tort of outrage, and negligence, regarding the purchase of an extended warranty by the plaintiff from Defendants and the denial by Defendants of a claim made by Plaintiff, all separately, jointly and in the alternative, plus attorney fees, interest and costs.

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**

Respectfully submitted,

_____
Kevin Bennett, OBA #14185
The Bennett Law Firm
414 N.W. 4th Street, Suite 100
Oklahoma City, OK 73102
P: (405) 272-0303
kevin@bennettlawokc.com

- and –

Joseph T. Acquaviva, Jr., OBA #11743
WILSON, CAIN & ACQUAVIVA
300 NW 13th Street, Suite 100
Oklahoma City, OK 73103
P: (405) 236-2600
F: (405) 231-0062
jtacqua@wcalaw.com
*Attorneys for Plaintiff*