
\* 1 0 5 1 3 1 4 0 0 0 \*

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

**IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

JAN – 4 2022

RICK WARREN
COURT CLERK

126 _____

| | |
|---|---|
| **ARTHUR HARRIS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| **AMERICAN AUTO SHIELD, LLC,** | ) |
| **and CARSHIELD, LLC,**[1] | ) |
| | ) |
| Defendants. | ) |

Case No. CJ-2021-3014
*Honorable Aletia Haynes Timmons*

## FIRST AMENDED PETITION[2]

COMES NOW the plaintiff, Arthur Harris, and for his First Amended Petition, states as

follows:

## GENERAL FACTS

1.      Arthur Harris is a resident of Oklahoma City, Oklahoma.

2.      American Auto Shield, LLC, is a foreign limited liability company doing business

in the State of Oklahoma.

3.      CarShield, LLC, is a foreign limited liability company doing business in the State

of Oklahoma.

4.      Upon information and belief, American Auto Shield, LLC, and CarShield, LLC,

(hereafter collectively "Defendants") sell and issue "Mechanical Breakdown Protection", also

known as extended warranty policies within the State of Oklahoma.

---

[1] In its September 21, 2021, "Limited Answer" Defendant identified itself as NRRM, LLC d/b/a Carshield, LLC. Defendant shall be identified as Carshield, LLC until the pleadings are amended to reflect NRRM, LLC d/b/a Carshield, LLC.

[2] Filed with leave of court. *See* Journal Entry filed on December 15, 2021.

5.     Defendants regularly conduct business throughout the State of Oklahoma, including Oklahoma County.

6.     Defendants advertise, sell and issue policies, process and pay claims, and conduct all matters of business with customers living in Oklahoma County, Oklahoma.

7.     Defendant CarShield advertises and solicits Oklahoma citizens and residents to purchase "Mechanical Breakdown Protection" on television and on the internet as well as in other media.

8.     Defendant CarShield advertises and solicits Oklahoma citizens and residents to purchase what it designates as a "Service Agreement" on television and on the internet as well as in other media.

9.     Defendant CarShield advertises and solicits Oklahoma citizens and residents to purchase what it designates as "Mechanical Breakdown Protection" on television and on the internet as well as in other media.

10.    The matters sued upon herein occurred while Plaintiff's vehicle was being kept, driven, serviced, and maintained in Oklahoma County, Oklahoma.

11.    Defendants have sufficient contacts with the State of Oklahoma to warrant the exercise of *in personam* jurisdiction by this Court over them. Pursuant to 12 O.S. §2004(F), this Court has proper subject matter jurisdiction. Pursuant to 12 O.S. §137, venue is proper in Oklahoma County, Oklahoma.

12.    In its advertising CarShield uses the following terminology to describe the characteristics and benefits of what it euphemistically calls a Vehicle Service Contract:

a.    *claims*
b.    *premiums*
c.    *coverage*
d.    *deductible*

e. *benefits*
f. *protection*
g. *peace of mind*

13.     CarShield's internet website includes a **Frequently Asked Questions** section in which it states:

> Your car's engine, drive axle and transmission are covered in most CarShield contracts. These are the most expensive parts to repair. CarShield has them covered.

14.     Plaintiff adopts and incorporates paragraphs 1 through 12 above, as if more fully stated herein, and further alleges and states as follows.

15.     On or about May 4, 2020, Defendants advertised and marketed the "CarShield-Mechanical Breakdown Protection" product using phrases such as, "CarShield pays for repairs so I don't have to", and "If your car breaks down, could you afford to pay thousands and thousands on a new engine or transmission?  With CarShield you won't have to."

16.     On or about May 4, 2020, Defendants paid high-profile celebrities to advertise their products. These celebrities included "Ice-T" and "Chris Berman".

17.     In the "vehicle owner benefits" section of its internet website CarShield advertises Peace of Mind in the following way:

> Nobody likes it when their car breaks down, but it's good knowing your CarShield vehicle service plan will be ready to help. The sooner you choose CarShield, the quicker you'll drive with absolute peace of mind."

18.     In the "vehicle owner benefits" section of its internet website CarShield advertises "12 ways CarShield simplifies your automotive life." Among the 12 ways listed are the following:

18.1 Break downs are a nightmare but dealing with CarShield Administrators is a dream.

18.2 Your CarShield vehicle service contract can be as simple or as fancy as you like.

18.3 We pride ourselves in making our customers [sic] needs met. Whenever you need us, we will be here at your disposal.

18.4 A CarShield contract means one less thing to worry about.

18.5 File your claim online any time, we are here to help you when you need it.

18.6 People that we allow access to your car are professionals, not iffy amateurs.

19.    Defendants' intended audience for its commercials includes Plaintiff.

20.    Defendants and/or their authorized representatives authorized and approved of the content of their commercials.

21.    Defendants intend for the statements and representations contained in their commercials to be relied on by their intended audience, including Plaintiff.

22.    Plaintiff saw Defendants' television advertisements.

23.    Defendants' television advertisements stated that "CarShield pays for repairs so you don't have to"; or words to that effect.

24.    In its advertisements Defendants do not explain that CarShield sells Mechanical Breakdown Protection but does not pay claims.

25.    In its advertisements Defendants do not explain that American Auto Shield pays the claims, not CarShield. Defendants' television advertisements falsely represent the relationship between Defendants.

26.    Based on Defendants' advertisements Plaintiff believed he could purchase from CarShield protection from expensive repair costs to his vehicle, and he called the CarShield phone number.

27.    Plaintiff never spoke with American Auto Shield when purchasing the CarShield advertises "Mechanical Breakdown Protection".

28.     Based on the words used by CarShield in advertisements and in the documentation provided to Plaintiff by CarShield, he believed he bought insurance protection from CarShield against the high cost of repairing a covered mechanical breakdown.

29.     On or about May 4, 2020 (hereafter "the Purchase Date"), Defendants sold "Mechanical Breakdown Protection" to Plaintiff.

30.     Defendants also call the "Mechanical Breakdown Protection" sold to Plaintiff a "Service Agreement".

31.     Defendants also call the "Mechanical Breakdown Protection" sold to Plaintiff a "Vehicle Service Contract".

32.     On or about May 4, 2020 (hereafter "the Purchase Date"), Defendants sent Plaintiff a "Welcome to the CarShield Family" packet.

33.     In the "Welcome to the CarShield Family" packet sent to Plaintiff CarShield stated, among other things, "Thank you for your purchase; we look forward to servicing your protection needs."

34.     In the "Welcome to the CarShield Family" packet sent to Plaintiff CarShield stated, among other things, "Welcome to our family of vehicle owners that have the peace of mind and financial security of "Mechanical Breakdown Protection."

35.     In the "Welcome to the CarShield Family" packet sent to Plaintiff, CarShield identifies itself as "Marketer/Seller".

36.     As a result of Plaintiff's purchase of "Mechanical Breakdown Protection", CarShield sent Plaintiff a Declarations Page for Contract MRF3168161.

37.     The monthly charge for the "Mechanical Breakdown Protection" CarShield sold Plaintiff was $109.99.

38.     The vehicle covered under the "Mechanical Breakdown Protection" CarShield sold to Plaintiff was a 2006 Chrysler, VIN 2C3LA73WX6H498283 ("covered vehicle").

39.     The mileage on vehicle covered under the "Mechanical Breakdown Protection" CarShield sold to Plaintiff was a 100,054.

40.     The "Mechanical Breakdown Protection" contract deductible was One Hundred Dollar ($100.00).

41.     The "Mechanical Breakdown Protection" plan type sold by CarShield to Plaintiff was AUPTGOLD.

42.     The "Mechanical Breakdown Protection" sold to Plaintiff by CarShield did not require Plaintiff to personally sign an application.

43.     The "Mechanical Breakdown Protection" sold to Plaintiff by CarShield was signed by a CarShield Phone Authorized Agent.

44.     The obligations under the "Mechanical Breakdown Protection" sold to Plaintiff by CarShield are insured by American bankers Insurance Company of Florida.

45.     The "Mechanical Breakdown Protection" identified as "Contract Number – MRF3168161," was in full force and effect from the Purchase Date through at least the calendar year 2020.

46.     The "Mechanical Breakdown Protection" provided coverage and/or insurance protection for Plaintiff in the event Plaintiff's vehicle, suffered a mechanical breakdown of the engine within the time and mileage parameters of the "Mechanical Breakdown Protection", which Plaintiff believed amounted to insurance coverage.

47.     During the month of June 2020, the Vehicle suffered a mechanical breakdown of the engine, which occurred during the time and mileage parameters of the "Mechanical Breakdown Protection".

48.     Plaintiff timely initiated a claim with Defendants (hereafter "the Claim").

49.     Defendants instructed Plaintiff to take the Vehicle to an ASE Certified mechanic for diagnosis.

50.     Plaintiff had the Vehicle towed to Mr. Milex Transmission, which performs engine and transmission repairs, as instructed by Defendants.

51.     An ASE certified mechanic employed by Mr. Milex Transmission (hereafter "the Mechanic") inspected the Vehicle and determined the engine was damaged beyond repair and needed to be replaced.

52.     The Mechanic concluded a hydraulic lifter in the engine seized up, which caused damage to the cam shaft, which caused damage to the engine block.

53.     According to the terms of the "Mechanical Breakdown Protection", the hydraulic lifter is a covered part, as are any other parts damaged as a result of the failed hydraulic lifter. Therefore, the damage to the lifter, cam shaft and engine block were covered under the terms of the "Mechanical Breakdown Protection".

54.     Plaintiff made proper demand on Defendants that his claim be paid in full.

55.     Defendants acknowledged the hydraulic lifter was covered under the terms of the "Mechanical Breakdown Protection".

56.     Defendants were aware, and did not dispute, the damage to the cam shaft and the engine block were caused by the failed hydraulic lifter.

57.     Defendants offered to pay the repair costs for the hydraulic lifter only.

58.     Defendants denied payment for the repair/replacement of the cam shaft and the engine block.

59.     Defendants' actions amount to a denial of Plaintiff's claim.

60.     Defendants' actions amount to a total disregard of obvious evidence, which supported coverage and required payment of the entire Claim.

61.     Defendants' actions are in violation of the duty of good faith and fair dealing.

62.     When Plaintiff purchased the "Mechanical Breakdown Protection" Plaintiff did not contract to obtain a commercial advantage but sought to protect himself against the risks of accidental losses and the mental stress that could result from such losses.

63.     Defendants knew one of the primary reasons consumers, such as Plaintiff, purchase "Mechanical Breakdown Protection" is the peace of mind and security that it provides in the event of loss.

64.     Defendants knew that the very risk Plaintiff protected himself against presupposed that when a claim was made for benefits under the "Mechanical Breakdown Protection" plan, Plaintiff could possibly be in financial straits or circumstances and, therefore, particularly vulnerable to oppressive tactics on the part of economically powerful entities, such as Defendants.

65.     The CarShield's advertisements are designed to induce consumers into believing that by purchasing the "Mechanical Breakdown Protection" the risk of paying for repairs is transferred from the consumer to the Defendants.

66.     CarShield promises to consumers include but are not limited to:



**Stop worrying about repair costs if your car breaks down**

A CarShield service contract means one less thing to worry about.

67.     CarShield promises to consumers also include:

 **Save $1,000's in Repair Costs**

What will you do if your vehicle stops running and requires an expensive repair?
Are you able to write a check today for $1,000 or more? With a service contract
from CarShield, your covered repair claims will be paid 100%, after your
deductible, directly to your mechanic or dealer.

68.     CarShield promises peace of mind to consumers using the following language:

**Peace of Mind**

Nobody likes it when their car breaks down, but it's good knowing your CarShield
vehicle service plan will be ready to help. The sooner you choose CarShield, the
quicker you'll drive with absolute peace of mind.

69.     CarShield promises future customers, "Our customer service is 2ⁿᵈ-to-none. We pride ourselves in making our customers (sic) needs met. Whenever you need us, we will be here at your disposal! Stop worrying about repair costs if your car breaks down. A CarShield service contract means one less thing to worry about."

70.     Defendants' relationship with Plaintiff was a fiduciary relationship and/or a special relationship making the laws governing fiduciary relationships applicable.

71.     Despite this fiduciary and/or special relationship, Defendants refused to honor their prior commitment to pay for damages incurred by Plaintiff.

72.     As a result of Defendants' improper conduct, Plaintiff sustained, among other things, monetary damages, inconvenience, physical discomfort, loss of peace of mind and security, emotional distress, worry, anguish, financial distress, and attorney fees.

73.     As Marketer and Seller, CarShield had input into the wording used in the advertising of the Mechanical Breakdown Protection.

74.     As Marketer and Seller, CarShield had control of the wording used in the advertising of the Mechanical Breakdown Protection.

75.     As Marketer and Seller, CarShield had a duty to consumers, including Plaintiff, to not use false or misleading language in the advertising of the Mechanical Breakdown Protection.

76.     As Marketer and Seller, CarShield had a duty to consumers, including Plaintiff, to not misrepresent the benefits and attributes of the Mechanical Breakdown Protection.

77.     The Better Business Bureau® has issued **CURRENT ALERTS – Pattern of Complaint** for CarShield. *See* www.bbb.org/us/mo/saint-peters/profile/suto-service-contract-companies/carshield-0734-310030296

78.     In its Current Alert for CarShield the Better Business Bureau® advises consumers to use caution if considering doing business with CarShield.

79.     In its Current Alert for CarShield the Better Business Bureau® advises consumers that it has received a pattern of consumer complaints alleging that CarShield:

> 79.1 Employed misleading sales and advertising practices.
>
> 79.2 Carshield's misleading sales and advertising practices include TV advertisements stating consumers will not be responsible for expensive repairs and can take their vehicle to any repair facility which consumers found was not to be true.
>
> 79.3 CarShield failed to cover repairs.
>
> 79.4 CarShield failed to adequately explain mileage and time component before coverage begins.
>
> 79.5 CarShield delayed taking and processing claims leaving customers without their vehicles.
>
> 79.6 CarShield provided poor customer service.

80.     According to Better Business Bureau® *Code of Advertising*, "The primary responsibility for truthful and non-deceptive advertising rests with the advertiser.

81.     The Better Business Bureau® contacted CarShield in 2018 regarding consumer complaints related to misleading sales and advertising practices.

82.     CarShield contacted the Better Business Bureau® and in response to the inquiry, advised the Better Business Bureau® that CarShield would make one modification to its sales and advertising practices to provide greater clarity.

83.     Thereafter, the Better Business Bureau® contacted CarShield but did not receive a reply.

84.     According to the Better Business Bureau® the changes made by CarShield to its ales and advertising do not address the Better Business Bureau® concerns of misleading sales and advertising practices.

85.     CarShield has an "F" rating by the Better Business Bureau®.

86.     CarShield is not a Better Business Bureau® accredited business.

87.     According to the Better Business Bureau®, as of January 4, 2022, there have been 1,238 consumer complaints reported against CarShield in the last 12 months.

88.     According to the Better Business Bureau®, as of January 4, 2022, there have been 2,544 consumer complaints reported against CarShield in the last 3 years.

89.     According to the Better Business Bureau®, the reasons for CarShield's "F" rating include advertising issues, failing to resolve underlying cause(s) of a pattern of complaints and the 2,544 consumer complaints asserted against CarShield. [3]

---

[3] For confirmation of the allegations contained in ¶¶ 77 – 89, *see* www.bbb.org/us/mo/saint-peters/profile/suto-service-contract-companies/carshield-0734-310030296

90.     CarShield's misleading sales and advertising practices continue in 2022. CarShield advertises in different media that the product it sold to Plaintiff is an "extended warranty".[4]



91.     CarShield's misleading sales and advertising practices continue in 2022. CarShield advertises in different media that the product it sold to Plaintiff is an "extended warranty". Another example of representing to the public that it is selling an "extended warranty" is as follows:[5]



---

[4] *See* www.thedetroitbureau.com/guides/warranty/carshield-cost/#carshield%20Extended%20Warranty%20Cost:%20Plans%20Breakdown

[5] *See* www.motor1.com/reviews/384094/carshield-review/

92.     Despite CarShield's claim that does not market or sell extended warranties, it allows and authorizes third parties to market, advertise and misrepresent the characteristics, attributes and benefits of its "Mechanical Breakdown Protection."

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FRAUD[6]

93.     Plaintiff incorporates Paragraphs 1 to 92 herein by reference.

94.     Defendants advertised the "Mechanical Breakdown Protection" in a manner which led Plaintiff to believe he was buying protection against the high cost of auto repairs from CarShield. Defendants led Plaintiff to believe that if his engine failed then all he would have to pay was a deductible and that he was insured against that loss.

95.     Defendants failed to make full disclosure of the terms and conditions of the "Mechanical Breakdown Protection".

96.     Defendants did not disclose that CarShield only sold "Mechanical Breakdown Protection" but did not pay claims brought under the policy.

97.     Defendants' advertisements specifically state CarShield pays claims, which is false.

98.     Defendants' advertisements create the impression in the consumers' mind that CarShield pays claims, which is false.

99.     Defendants advertised the "Mechanical Breakdown Protection" as if it is insurance.

---

[6] Plaintiff's Fraud Claim was not subject to Defendant's Motion to Dismiss. Plaintiff's Fraud claim pled herein is substantially similar to his Fraud claim as set forth in his original Petition with the exception that Plaintiff has substituted "Mechanical Breakdown Protection" in place of "Warranty".

100.    In response to Defendants' advertisements Plaintiff called the designated phone number and spoke with one of Defendants' authorized representatives about the "Mechanical Breakdown Protection". As to coverage, the representative told Plaintiff all he would ever have to pay for an engine was a One Hundred Dollar ($100.00) deductible. Plaintiff relied to his detriment on the false representations.

101.    Defendants' actions amount to fraud, actual and constructive.

## SECOND CAUSE OF ACTION
## FRAUDULENT INDUCEMENT[7]

102.    Plaintiff incorporates Paragraphs 1 to 101 herein by reference.

103.    Defendants made the false representations referenced herein in order to induce Plaintiff to agree to their form contracts, including arbitration language.

104.    Plaintiff did not sign documents and did not agree to arbitration.

105.    Defendants explained parts of the "Mechanical Breakdown Protection", but failed to make full disclosure of its terms, including arbitration.

106.    Defendants' actions amount to fraudulent inducement.

---

[7] Plaintiff's Fraudulent Inducement claim was not subject to Defendant's Motion to Dismiss. Plaintiff's Fraudulent Inducement claim pled herein is substantially similar to his Fraudulent Inducement claim as set forth in original Petition with the exception that Plaintiff has substituted "Mechanical Breakdown Protection" in place of "Warranty".

## THIRD CAUSE OF ACTION
## VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT[8]

107.    Plaintiff incorporates Paragraphs 1 to 106 herein by reference.

108.    The Oklahoma Consumer Protection Act declares it unlawful for a business to make a false or misleading representation as to the source and/or benefits of the subject of a consumer transaction.

109.    A seller of "Mechanical Breakdown Protection" must truthfully advertise the nature and benefits of the product it sells.

110.    A seller of "Mechanical Breakdown Protection" must fully disclose the terms of the "Mechanical Breakdown Protection" contract.

111.    A seller of "Mechanical Breakdown Protection" in the State of Oklahoma must obey and follow the rules and regulations of the Oklahoma Consumer Protection Act.

112.    A seller of "Mechanical Breakdown Protection" must honor and pay claims pursuant to the terms of the "Mechanical Breakdown Protection" contract.

113.    The provisions of the Oklahoma Service Warranty Act 15 O.S. § 141.1 *et. seq.,* do not limit Plaintiff's remedies under general civil law or common law.

114.    The provisions of the Oklahoma Service Warranty Act 15 O.S. § 141.1 *et. seq.,* are cumulative to the rights and remedies available under the general civil and common law.

---

[8] Plaintiff's Violation of the Oklahoma Consumer Protection Act claim was addressed in Defendant's Motion to Dismiss. The Court granted leave for Plaintiff to re-plead his Violation of the Oklahoma Consumer Protection Act claim.

115.    The "Mechanical Breakdown Protection" sold to Plaintiff does not meet the statutory provisions of a Service Warranty as defined in the Oklahoma Service Warranty Act 15 O.S. § 141.1 *et. seq.*

116.    The "Mechanical Breakdown Protection" sold to Plaintiff does not have any mileage limitation.

117.    The "Mechanical Breakdown Protection" sold to Plaintiff remains in force as long as Plaintiff makes the monthly premium payments.

118.    The "Mechanical Breakdown Protection" sold to Plaintiff has a Renewal Term which means each succeeding month for which premium payment is received.

119.    The "Mechanical Breakdown Protection" sold to Plaintiff is intended to provide indemnification for covered repairs.

120.    The "Mechanical Breakdown Protection" sold to Plaintiff provided full protection against engine failure and that Plaintiff's only cost would be the deductible, when in fact Defendants knew that to be untrue, which amounts to a violation of the Oklahoma Consumer Protection Act.

121.    Defendants represented that the "Mechanical Breakdown Protection" sold to Plaintiff provided full protection against engine failure and that Plaintiff's only cost would be the deductible, when in fact Defendants knew that to be untrue, which amounts to a violation of the Oklahoma Consumer Protection Act.

122.    Defendants' actions in the advertising, marketing, and sales of the "Mechanical Breakdown Protection" sold to Plaintiff constitute violations of the Oklahoma Consumer Protection Act's "Unlawful Practices" set forth under 15 O.S. § 753.

123.    Defendants falsely informed Plaintiff the "Mechanical Breakdown Protection" provided full protection against engine failure and that Plaintiff's only cost would be the deductible, when in fact Defendants knew that to be untrue, which amounts to a violation of the Oklahoma Consumer Protection Act.

124.    The Oklahoma Consumer Protection Act provides for actual damages and costs of litigation including reasonable attorney's fees.

## FOURTH CAUSE OF ACTION
## BREACH OF CONTRACT[9]

125.    Plaintiff incorporates Paragraphs 1 to 124 herein by reference.

126.    Defendants breached the "Mechanical Breakdown Protection" contract with Plaintiff by failing to pay him for repair costs incurred as a result of the engine breakdown. As a result of Defendants' breach of contract, Plaintiff has been damaged.

## FIFTH CAUSE OF ACTION
## BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING[10]

127.    Plaintiff incorporates Paragraphs 1 to 126 herein by reference.

---

[9] Plaintiff's Breach of Contract claim was not subject to Defendant's Motion to Dismiss. Plaintiff's Breach of Contract claim pled herein is substantially similar to his Breach of Contract claim as set forth in original Petition with the exception that Plaintiff has substituted "Mechanical Breakdown Protection" in place of "Warranty".

[10] Plaintiff's Breach of the Implied Duty of Good Faith and Fair Dealing claim was addressed in Defendant's Motion to Dismiss. The Court granted leave for Plaintiff to re-plead his Breach of the Implied Duty of Good Faith and Fair Dealing claim.

128.    Defendants' "Mechanical Breakdown Protection" contract provides for the transfer of risk and meets all of the elements for a contract of insurance.

129.    On or about May 4, 2020 (hereafter "the Purchase Date"), Defendants sent Plaintiff a "Welcome to the CarShield Family" packet.

130.    In the "Welcome to the CarShield Family" packet sent to Plaintiff CarShield stated, among other things, "Thank you for your purchase; we look forward to servicing your protection needs."

131.    In the "Welcome to the CarShield Family" packet sent to Plaintiff CarShield stated, among other things, "Welcome to our family of vehicle owners that have the peace of mind and financial security of "Mechanical Breakdown Protection."

132.    In *Embry v. Innovative Aftermarket Sys. L.P.*, 2008 OK CIV APP 92, 198 P.3d 388; citing 1 Couch on Insurance, § 1:6 (3rd Ed.2007); *see also Epmeier v. U.S.,* 199 F.2d 508, 509–10 (7th Cir.1952) ("Insurance, of ancient origin, involves a contract whereby, for an adequate consideration, one party undertakes to indemnify another against loss from certain specified contingencies or perils. It is contractual security against possible anticipated loss. Risk is essential, and equally so, a shifting of its incidence from one to another."); *Commissioner of Int. Rev. v. W.H. Luquire Burial Ass'n. Co.,* 102 F.2d 89 (5th Cir., 1939) (Luquires's agreement to provide burial benefits for a consideration equated to an insurance contract to tax company as an insurance company).

133.    In *McMullan v. Enter. Fin. Grp., Inc.,* 2011 OK 7, ¶ 19, 247 P.3d 1173 the Oklahoma Supreme Court discussed that vehicle service contracts were written like insurance policies and that the **"obvious purpose of a vehicle service contract is to protect the purchaser from the expenses associated with an unexpected mechanical breakdown or an expensive but**

**necessary repair.**" *McMullan*, 2011 OK 7, ¶ 13, 247 P.3d at 1178. *See Sparks v. Old Republic Home Prot. Co., Inc.*, 2020 OK 42, ¶ 33, 467 P.3d 680, 690, *cert. denied, Old Republic Home Prot. Co., Inc. v. Sparks*, 141 S. Ct. 895, 208 L. Ed. 2d 452 (2020).

134.    The purpose of the "Mechanical Breakdown Protection" sold to Plaintiff was to protect Plaintiff from the expenses associated with an unexpected mechanical breakdown or an expensive but covered repair.

135.    Just as in *Embry* and *Sparks*, the workings and purpose of Defendants' "Mechanical Breakdown Protection" meet all elements of an insurance product. *See, Epmeier*, 199 F.2d at 509–10. ("Whether or not a contract is one of insurance is to be determined by its purpose, effect, contents, and import, and not necessarily by the terminology used, and even though it contain declarations to the contrary."); 1 Couch on Insurance § 1:8 (3d Ed.2007).

136.    Defendants owed a duty of good faith and fair dealing to Plaintiff, which obligated Defendants to perform a reasonable investigation and pay Plaintiff's covered claim.

137.    By ignoring obvious evidence and by failing to pay Plaintiff's claim, Defendants breached their duty of good faith and fair dealing owed to Plaintiff.

138.    Defendant further violated the duty of good faith and fair dealing by unreasonably failing to perform a proper investigation and by imposing conditions upon Plaintiff that did not exist within the "Mechanical Breakdown Protection" contract.

139.    Defendants had no reasonable basis to deny Plaintiff's claim.

140.    Defendants further violated their duty of good faith and fair dealing by negligently supervising this claim.

141.    Defendants breached the duty of good faith and fair dealing owed by them to Plaintiff.

142.   Defendants recklessly disregarded their duty to deal fairly and in good faith with Plaintiff.  Further, Defendant acted intentionally and with malice by failing to pay Plaintiff's claim and by imposing arbitrary conditions on Plaintiff that were not contained within the "Mechanical Breakdown Protection" contract.

143.   Defendants should be punished for engaging in reckless, intentional, and malicious conduct and to serve as an example to Defendants and others who might attempt the same type of conduct.

144.   As a result of Defendants' breach of their duty of good faith and fair dealing, Plaintiff has suffered actual monetary loss and also has suffered inconvenience, physical discomfort, loss of peace of mind and security, emotional distress, worry, anguish, embarrassment, and financial distress.

145.   Defendants' actions have inflicted financial consequences and other injury and damages upon Plaintiff.

146.   Further, Defendants' wanton, willful, malicious, and/or reckless acts are part of a common plan and/or scheme to wrongfully deny payment of legitimate claims made by their customers, both in investigating, evaluating, and paying first-party claims.

## **NEGLIGENCE**[11]

147.   Plaintiff incorporates Paragraphs 1 to 146 herein by reference.

---

[11] Plaintiff's Negligence claim was not subject to Defendant's Motion to Dismiss. Plaintiff's Negligence claim pled herein is substantially similar to his Negligence claim as set forth in original Petition with the exception that Plaintiff has substituted "Mechanical Breakdown Protection" in place of "Warranty".

148.    Defendants owed a duty to Plaintiff to protect him from its employees falsely advertising the Warranty, falsely describing the terms and conditions of the Warranty, and failure to pay his claim.

149.    Defendants' employees falsely advertised the Warranty, falsely described the terms and conditions of the "Mechanical Breakdown Protection", and improperly failed to pay his claim.

150.    Defendants breached their duty to Plaintiff.

151.    Defendants' actions amount to negligence.

WHEREFORE, the plaintiff prays for judgment against the defendant, for actual and punitive damages, both in an amount in excess of the amount required for federal diversity jurisdiction, for fraud, fraudulent inducement, violation of the Oklahoma Consumer Protection Act, negligence, breach of contract, breach of the implied duty of good faith and fair dealing, and negligence, regarding the purchase of the "Mechanical Breakdown Protection" by the Plaintiff from Defendants and the subsequent denial by Defendants of a claim made by Plaintiff, all separately, jointly and in the alternative, plus attorney fees, interest and costs.

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**

Respectfully submitted,

*Joseph T. Acquaviva, Jr.*
Joseph T. Acquaviva, Jr., OBA #11743
WILSON, CAIN & ACQUAVIVA
300 NW 13th Street, Suite 100
Oklahoma City, OK 73103
P: (405) 236-2600
F: (405) 231-0062
jtacqua@wcalaw.com

- and –

Kevin Bennett, OBA #14185
The Bennett Law Firm
414 N.W. 4th Street, Suite 100
Oklahoma City, OK 73102
P:  (405) 272-0303
kevin@bennettlawokc.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of January 2022, a true and correct copy of the above and foregoing was delivered, via email and facsimile to the following:

CHRISTPOPHER A. BARROW
cbarrow@barrowgrimm.com
EMILY B. KOSMIDER
e.kosmider@barrowgrimm.com
Dillon J. Hollingsworth
dillonhollingsworth@barrowgrimm.com
110 West 7th Street, Suite 900
Tulsa, Oklahoma 74119-1044
**Fax:** (918) 585-2444
***Attorneys for Defendant NRRM, LLC d/b/a Carshield, LLC***